MINNEAPOLIS THRESHING MACHINE COMPANY, a Foreign Corporation, Respondent, v. FIRST STATE BANK OF FORT YATES, NORTH DAKOTA, a Domestic Corporation, Appellant.

(218 N. W. 603.)

Chattel mortgages — when given by one not owner — purchaser at foreclosure cannot retain property against one who forecloses a chattel mortgage given by owner.

One who purchases personal property at the foreclosure of a mortgage thereon given by one not the owner cannot retain the property against the demand of one having a mortgage on this property given by the owner, and who demands possession for the purpose of foreclosure.

Opinion filed March 21, 1928. Rehearing denied April 9, 1928.

Chattel Mortgages, 11 C. J. § 39 p. 428 n. 42; § 563 p. 732 n. 67.

Appeal from the District Court of Sioux County, *Berry*, J.
Affirmed.
*A. McG. Beede*, and *Hyland & Foster* for appellant.
*C. F. Kelsch*, for respondent.

BURR, J. On the 31st day of March 1925, plaintiff sold machinery to Julius Bendisch and Steve Bendisch, Jr., residents of Morton county, receiving some cash therefor, and taking the purchasers' promissory notes for $753 and $750, respectively, due October 1, 1925 and October 1, 1926, respectively, with interest at 8 per cent. One payment of $300 was made November 27, 1925 on the first note. To secure the payment of these notes the debtors gave a chattel mortgage in triplicate upon the machinery and other personal property including "10 head of mixed cattle, all ages, sex and color," but the mortgage is silent as to any lien on the increase. The mortgage contains this clause: "All of which property, for the purpose of obtaining credit, the undersigned represents is free of all liens, and that the same is owned by and in the possession of the undersigned." The mortgagors testified that these ten head were all the cattle they owned at that time. One of the triplicate series was taken to the office of the register of deeds of Morton county and left there for filing. Some time thereafter, and without the knowledge or consent of the plaintiff, the mortgagors removed to Sioux county, taking their cattle with them, and lived with their father, Steve Bendisch, Sr., on a farm there, but no copy of the mortgage was filed with the register of deeds of Sioux county.

On the 18th day of January, 1926, the father executed his promissory note to the defendant in the sum of $665 due October 1, 1926, with interest at 9 per cent giving as security therefor a chattel mortgage upon personal property including "seventeen head of cattle being all cattle owned by me at this time, eight cows, five yearling calves, two heifers 3 yr., one calf, one bull," and in the mortgage he also alleged "all the foregoing personal property being now owned by me and kept on or in connection with my farm," giving its description. The mortgage also covered "all increase of the above female animals, until the debt secured hereby is fully paid." This mortgage was filed with the register of deeds of Sioux county on February 6, 1926. On March 6, 1926 the father executed his promissory note to the plaintiff for $200 due October 1, 1926, with interest at 9 per cent and to secure the payment of the same gave another chattel mortgage upon the same personal property describing it the same way and with the same allegation of title. This mortgage was also filed with the register of deeds of Sioux county on March 12, 1926.

On November 19, 1925, the father made, executed and delivered his

promissory note to the Havelock Lumber Company 'for $256.75 due September 1, 1926, with interest at 9 per cent, and gave as security therefor a chattel mortgage on certain personal property including "one 3 year old blue cow weight 1,200 lbs. mulcy; one 5 year old blue cow, weight 1,250 lbs. mulcy; one 3 year old red cow, weight 1,100 lbs. mulcy; one 7 year old red cow weight 1,200 lbs., dehorned." This mortgage included an allegation of ownership in the mortgagor and that the property was free from all incumbrances. The note and mortgage to the Havelock Lumber Company were indorsed to defendant before maturity for value.

The defendant seized cattle in the possession of Steve Bendisch, Sr., as being covered by its mortgage, and foreclosed the mortgage. About the time of the foreclosure proceedings the plaintiff notified the defendant that it had a mortgage on some of the cattle seized and that these cattle were owned by Julius Bendisch and Steve Bendisch, Jr., and demanded the surrender of the property, which demand was refused. The plaintiff then brought this action in claim and delivery, alleging that the property seized in the claim and delivery proceedings was the property mortgaged by Julius Bendisch and Steve Bendisch, Jr., to the plaintiff. The property seized in the claim and delivery proceedings is described in the complaint as: "One spotted blue cow, one spotted blue cow, one white-faced heifer, one red cow, one red cow, one red and white faced heifer, one roam bull, one red spotted heifer, three heifers, mixed colors, three yearling steers mixed colors, one calf."

Thereafter the defendant furnished a redelivery bond and the property was returned. The case was submitted to a jury who found the plaintiff was entitled to the possession of three blue cows, one red cow, three spotted heifers and one blue heifer—fixing the value thereof in the sum of $349.00.

The main issue involved in the pleadings and the proof is the ownership of the seized cattle at the time the mortgages were given. Plaintiff claims that the father, Steve Bendisch, Sr., never owned said cattle, even though he may have given a chattel mortgage thereon. The defendant claims the property was the property of Steve Bendisch, Sr., and, in addition thereto, that even if plaintiff had a mortgage on said stock the mortgage was never put on file in Sioux county and therefore plaintiff's mortgage would be secondary.

It is the claim of the defendant the description of the cattle as given in plaintiff's mortgage is so vague and indefinite that the defendant is not bound thereby. The testimony of Julius Bendisch, Steve Bendisch, Jr., and Steve Bendisch, Sr., is direct and to the point that all of the cattle described in any mortgage which the father Steve Bendisch, Sr., gave to the defendant or to the Havelock Lumber Company, and all the cattle seized were owned by Julius Bendisch and Steve Bendisch, Jr., and that the property taken by the defendant under its mortgage was the property mortgaged by Julius Bendisch and Steve Bendisch, Jr., to plaintiff, together with increase of said property. In addition, the father claims he told the officers of the defendant bank at the time he gave them the mortgage that he was not the owner of the property, but this statement is denied by defendant. The defendant claims that the attendant circumstances, independent of the positive testimony of the Bendischs such as situation on the father's farm, the age of the boys when the mortgage was given—they being 19 years and 22 years of age respectively—the apparent inability of the boys to state for whom they had worked and the amount of their earnings, show the father was the owner of the property. However the boys testified positively that for several years they had been working out for various farmers and invested their money in some cows and heifers, taking them to their father's farm after they were purchased; that the cattle were purchased from time to time and that the little herd of "ten head" was the result of these earnings and savings.

On the trial of the case the plaintiff advanced the theory that even if the proof would show the father was the owner of the property mortgaged by the sons, nevertheless there was evidence tending to show that he had "ratified" the action of the sons in giving a mortgage thereon, and that defendant knew this at the time it took this mortgage. The court submitted this theory to the jury and defendant alleges this was error on the part of the court.

There are 33 allegations of error, most of which deal with rulings in the introduction of testimony; but the determination of the real issue disposes of these rulings. Defendant alleges error in the giving of instructions regarding the so-called "ratification" of the mortgage given by the sons. All of the evidence introduced shows clearly that the father never owned the property he mortgaged, that the boys were the owners

of it all, that any increase of such property belonged to the boys. Hence there could be no "ratification" or estoppel. The instruction was unnecessary. It was not based on any evidence but certainly could not be prejudicial in the light of the evidence. Even with reference to this instruction the court charged the jurors not to consider such question unless they found the father was the owner of the property described in plaintiff's mortgage.

The defendant alleges there is not sufficient proof of the filing of plaintiff's mortgage in Norton county and no proof of any copy filed in Sioux county. The evidence shows the mortgage was signed by the boys in triplicate, that one of this set was taken to the office of the register of deeds and left there for filing, that it was afterwards seen and found in the files and there is a certified copy of the same under the hand and seal of the register of deeds of Norton county showing the mortgage to be on file. This is sufficient proof, even if plaintiff had to prove the filing. In this case the father not being the owner of the property, the mortgage he gave thereon to the defendant cannot stand as against the mortgage given by the boys to the plaintiff. The court charged the jury that the plaintiff was required to prove that the boys owned the property, and gave plaintiff a mortgage thereon; that the animals mortgaged were traced into the hands of the defendant, and the value of each of these animals as found with the defendant; and that plaintiff could only recover for such mortgaged animals as were found in the possession of the defendant. As shown before, the jury returned a verdict for only a portion of the cattle sought to be recovered. Evidently the jury found that all of the property taken by the defendant was not covered by the plaintiff's mortgage. Plaintiff proceeded on the theory that it had a mortgage on the increase of the animals. There is no such provision in this mortgage. Therefore it could get judgment for such property only as the boys owned at the time they gave the mortgage and which was seized by the defendant. The jury were limited to this by the court. The court told the jury: "It will be necessary for the plaintiff to prove by a fair preponderance of the evidence each one of these animals. They will have to trace each one of these particular animals. Under the description in the mortgage there are just ten head. There were five cows, four heifers and one bull. They will have to trace by a fair preponderance of the evidence that those animals were the ones that were

mortgaged, and will have to trace them right into the hands of the bank, each separate animal. Each separate animal stands on his own feet, so you will have to, if you reach this phase of the case, you will have to determine which animals went into the hands ot the defendant bank, and that they refused to deliver it."

The court also required the jury to find the individual value of each animal if so traced. The defendant says it was error to specify the animals as "five cows, four heifers, and one bull." This is not the way they are described in the mortgage but it is the description given in the evidence as to the animals that were in fact mortgaged. There is no dispute as to this description. The question of the definiteness of the description becomes immaterial as the father had no right to give a mortgage on any of the property he did mortgage. The plaintiff was required to prove what portion of the "ten head of mixed cattle all ages, sex and color" was seized and sold by the defendants. Sufficient testimony was introduced to justify the jury in returning the verdict it did, and so the judgment of the district court is affirmed.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.